**CUSTOM FURS, Appellant,**

v.

**HOPPER FURS, LTD., Defendant,**

**Labor and Industrial Relations Commission, and Missouri Division of Employment Security, Respondents.**

·No. WD 51985.

Missouri Court of Appeals,
Western District.

June 4, 1996.

Karen E. Milner, St. Louis, for Appellant.

John B. Keller, Jefferson City, for Respondent Labor and Industrial Relations Commission.

Ronald Miller, Jefferson City, for Respondent Div. of Employment Security.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

■ Appellant, Custom Furs, Inc., brings this appeal of a decision of the Labor and Industrial Relations Commission (LIRC) holding that appellant acquired substantially all of the business of respondent Hopper Furs, Ltd. (Hopper) and, thus, stands in the position of Hopper Furs concerning its unemployment account under § 288.110, RSMo 1986. Although the case comes to us from the circuit court, we review the decision of the LIRC. *Burns v. Labor & Indust. Relations Comm'n*, 845 S.W.2d 553, 554 (Mo. banc 1993). Appellant's sole point on appeal asserts that the LIRC erroneously concluded that it acquired substantially all of the business of Hopper Furs.

■ We review the case under § 288.210, RSMo Supp.1995, which limits this court's review to questions of law unless the facts as found by the LIRC are not supported by competent and substantial evidence or were procured by fraud. We review the evidence in the light most favorable to the decision of the LIRC and disregard all unfavorable evidence. *Burns*, 845 S.W.2d at 555. On appeal, appellant seeks to abdicate itself from responsibility for Hopper's unemployment accounts on the basis that there was not sufficient competent evidence in the record to warrant the making of the award. § 288.210(4), RSMo Supp.1995. As there is no dispute as to the facts, we will adopt, in large part, the findings of fact of the Appeals Tribunal of the Division of Employment Security, which were adopted by the LIRC.

## FACTS

Appellant is a retail fur apparel business. On May 14, 1991, it entered into a purchase agreement with its primary competitor, Hopper Furs. Pursuant to the purchase agreement, appellant purchased Hopper's inventory, accounts receivable, customer lists, goodwill, some equipment, the right to use the competitor's name, and the option to lease the competitor's location until November 1, 1991, for the purpose of conducting normal retail operations and for conducting special sales. Hopper also entered into a covenant not to compete until after December 31, 1993, and to not advertise to the public or its customers the sale to appellant, until after appellant made the announcement. Appellant did not acquire any of Hopper's liabilities except the storage and lay-away agreements Hopper had entered into with its customers.

Though appellant did an inventory and retagged the garments immediately after the purchase, the store at the Hopper location did not close, though the hours were changed from 9 a.m. to 5 p.m. on Monday through Saturday to 10 a.m. to 6 p.m. on Monday through Saturday to conform to appellant's other store hours.

Appellant hired 8 of the approximately 20 employees who had worked for Hopper. Appellant continued to operate a retail fur sales business at Hopper's location under the name of Hopper Furs, Ltd., until the fall of 1991, with no notice to the public of the purchase. At the end of the summer, appellant conducted a "going out of business sale" under the name of Hopper Furs, Ltd., at the location leased from Hopper. That sale took place in August and September, 1991. When the Hopper location was finally closed, 450 of the 1,058 garments originally purchased by appellant were still in inventory. Those remaining items were then transferred to another location belonging to appellant.

Appellant had a legitimate business purpose in wanting the public to believe Hopper was still in business for a period of time into the future after the purchase took place. That purpose was to conduct the "going out of business sale" at the beginning of the fur apparel buying season instead of in the spring.

## DISCUSSION

■ At issue in this case is § 288.110, RSMo 1986, which states:

Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer, excepting in any such case any assets retained by such employer incident to the liquidation of his obligation, and in respect

to which the division finds that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties....

We must determine whether there was competent and substantial evidence before the LIRC supporting its decision that appellant. "acquired substantially all of the business" of Hopper. There was one dissenting opinion at the LIRC.

Appellant relies primarily on the case of *Mascom Management, Inc. v. Labor and Industrial Relations Commission,* 586 S.W.2d 802 (Mo.App.1979), by demonstrating the similarities between the facts of the business acquisitions in that case and the facts of this case. We do find certain similarities in the two cases, but we find one very important difference. In *Mascom,* the successor corporation had never had any contact or connection with the predecessor corporation. *Id.* at 803–04. Plus, the successor never took over any of the accounts of the predecessor. *Id.* at 804. This is an important distinction because, in *Mascom,* the successor merely leased a building and equipment which had been previously leased by the predecessor. *Id.* at 803–04. Though both corporations operated the leased premises as a hotel, there was no acquisition of the business of the predecessor. *Id.* In this case, appellant negotiated an agreement with the predecessor and ultimately purchased the inventory, accounts receivable, the goodwill of the business, and operated the business under the same name for a number of months. These are the facts which led the LIRC to place appellant in the position of Hopper as a successor corporation.

Appellant would have us distinguish between scenarios where the successor merely carries on its previous business and where it solely continues the predecessor's business without consolidating it with the successor's own business. We need not decide this issue. There was substantial and competent evidence before the LIRC that appellant acquired substantially all of Hopper's business and continued it as before. Simply because appellant purchased the Hopper store for future consolidation with its own business does not preclude it from falling within the purview of § 288.110.

## CONCLUSION

In conclusion, we note that the dissenting opinion from the decision of the LIRC was well-reasoned and well-written. When the legislature provides somewhat vague standards by which cases are adjudicated, there is room for discretion to be exercised, and hence, room for disagreement. Though we find the dissenting opinion to be reasonable, we could not reach a contrary conclusion from that of a majority of the LIRC in this case unless it was not supported by competent and substantial evidence on the record. *Tin Man Enters. v. Labor & Indus. Relations Comm'n,* 866 S.W.2d 147, 149 (Mo.App. 1993). As discussed above, we find there was competent and substantial evidence to support the decision of the LIRC and, thus, affirm its holding.

All concur.