ATLAS MOBILFONE, INC., Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION, Respondent.

No. WD 52901.

Missouri Court of Appeals,
Western District.

Jan. 14, 1997.

Gary A. Powell, Springfield, for appellant.

Ronnae L. Coleman, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and BERREY and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Atlas Mobilfone (appellant) appeals the decision of the Labor and Industrial Relations Commission (the Commission) affirming the decision of the Division of Employment Security (the Division) classifying appellant as a new employer for purposes of determining appellant's unemployment contribution tax rate, § 288.110.[1] Atlas Security at one time conducted two businesses, a security business and a paging business. The majority shareholder of Atlas Security, Marvin Britton, later incorporated appellant, with Atlas Security retaining the security business and appellant assuming the operations of the paging business. Appellant seeks status as a successor corporation to Atlas Security under § 288.110 in order to succeed to Atlas Security's unemployment contribution tax rate of 0.0% under the Missouri Employment Security Act, rather than the new employer rate of 2.7%. Appellant raises two points on appeal: 1) that the Commission erred in affirming certain critical findings of fact of the

appeals referee that were not supported by competent and substantial evidence; and, 2) that the Commission erred in deciding that appellant was not a successor to Atlas Security under § 288.110 but was a new employer, because such a finding is unreasonable and inequitable under the statute and does not further its purpose to stabilize conditions of employment. Because we find the holding in *KSD/KSD–TV, Inc. v. Labor & Indust. Rel. Comm'n*, 562 S.W.2d 346 (Mo. banc 1978), to be controlling, we reverse.

## Facts

The facts viewed in a light·most favorable to the decision of the Commission are as follows. Atlas Security has been in the business of selling alarm and fire detection systems and electronic surveillance and roving patrol security services since it was incorporated as a Missouri corporation in 1964. Marvin Britton started the company and was its majority shareholder and principal manager until 1992. Within a few years of Atlas Security's inception, Britton expanded it into the paging business. Britton's son-in-law, Steven Powell, was the sales manager for the paging business and the security business. The two businesses shared some employees, including management and bookkeeping personnel and the receptionist, and operated out of the same facility in Springfield. In 1978, Britton incorporated appellant as a Missouri corporation, and it undertook Atlas Security's paging business while Atlas Security continued to operate the security business. The two corporations continued to operate as they had as Atlas Security: Britton still owned both; he continued to manage both along with Powell; there was no change in business operations; and, both corporations continued to operate from the same facility. To limit administrative problems, the two corporations continued to treat employees as employees of Atlas Security for purposes of employment tax reporting and returns. Atlas Security also continued to pay employees of both companies, although appellant did periodically reimburse Atlas Security for the wages paid to its employees, beginning in the mid–1980s.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

As part of his retirement, Britton sold the stock of appellant and Atlas Security to his daughters, Patsy Powell (Steven Powell's wife) and Nancy Wade, respectively, on October 1, 1992. Mr. Powell was named president of appellant, and Wade's husband, Jim Wade, was named president of Atlas Security. The two sons-in-law managed the two corporations jointly at first, but they gradually began to manage them independently. The stock sale caused no change to the business operations of either company; no employees were terminated; both businesses continued to operate from the same facility; and, the employees' wages, benefits, duties and responsibilities remained the same.

In 1994, appellant began filing separate employment returns and registered with the Division as a successor to Atlas Security. On June 30, 1994, the Division denied successor status to appellant under § 288.110. This meant that appellant was assigned an unemployment contribution tax rate under the Missouri Employment Security Act of 2.7% as a new employer with no experience, rather than Atlas Security's rate of 0.0% as a successor corporation. Appellant appealed the Division's decision to the Appeals Tribunal July 15, 1994. After a hearing on February 22, 1995, before the Honorable G.W. Redding, Appeals Referee, the Division's declaration was affirmed. On March 14, 1995, appellant filed an application for review of the decision with the respondent Labor and Industrial Relations Commission. The Commission affirmed, and adopted as its own, the Appeals Tribunal's decision. Appellant filed a petition for judicial review in the Circuit Court of Cole County, pursuant to § 288.210. The Circuit Court affirmed the new employer status decision on March 15, 1996. This appeal follows.

## I.

### A. Standard of Review

We review the Commission's decision, not the judgment of the circuit court. *Div. of Emp. Sec. v. Taney Cty. Dist. R–III,* 922 S.W.2d 391, 393 (Mo. banc 1996). Section 288.210, RSMo Supp.1995, limits our review to questions of law unless the facts found by the Commission are not supported by competent and substantial evidence or were procured by fraud. *Id.* at 393; *Custom Furs v. Hopper Furs, Ltd.,* 923 S.W.2d 505, 506 (Mo.App.1996). "This court is not bound by the Commission's conclusions of law, nor its application of the law to the facts. *See* § 288.210 RSMo Supp.1995." *Div. of Emp. Sec.,* 922 S.W.2d at 393. We review the evidence in the light most favorable to the decision of respondent and disregard all unfavorable evidence. *Custom Furs,* 923 S.W.2d at 506.

### B. Discussion

In Point I, appellant claims that the Commission erred in affirming certain of the appeals referee's findings of fact because they were unsupported by competent and substantial evidence. The findings in question are that after the stock sales in 1992, the two corporations had different management personnel; that the equipment used by appellant after it was incorporated in 1978 was owned by Marvin Britton; and, that it was Britton who sold the assets of appellant and Atlas Security to his daughters in 1992.

Appellant's first point is not properly characterized as a point relied on under Rule 84.04(d). This rule provides, in pertinent part, that:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and **wherein and why** they are claimed to be erroneous, with citations of authorities thereunder. . . .

Rule 84.04(d) (emphasis added). The Missouri Supreme Court interpreted this rule in *Thummel v. King,* stating:

[C]ompliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the

ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

*Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978) (emphasis supplied); *Meadows v. Jeffreys,* 929 S.W.2d 746, 749–50 (Mo.App. 1996); *Hubbs v. Hubbs,* 870 S.W.2d 901, 908 (Mo.App.1994).

In its first point, appellant does not challenge the decision of the Commission that appellant was not a successor under § 288.110; rather, it challenges certain of respondent's findings of fact that it claims are in error and critical to the Commission's decision that it seeks to reverse. Thus, appellant's claim in Point I is not, practically speaking, a point relied on, but is part and parcel of its claim and argument in Point II that the Commission erred in deciding appellant was not a successor corporation to Atlas Security pursuant to § 288.110. Thus, we will treat appellant's two points as one for discussion purposes.

Appellant claims that the respondent erred in deciding that appellant is not a successor corporation to Atlas Security under § 288.110, but rather was a new employer subject to the Employment Security Law effective January 1, 1992. As a result of the Commission's decision, appellant would be required to pay the unemployment contribution tax rate under the Missouri Employment Security Law at the new employer rate of 2.7%, rather than succeeding to Atlas Security's much lower rate of 0.0%. Appellant claims in this decision that the Commission erroneously decided and applied the law as found in § 288.110.

The parties agree that this case turns on whether the second sentence of § 288.110 has any application here. The second sentence of § 288.110 provides that:

If two or more individuals, organizations, or employing units acquired at approximately the same time substantially all of the business of an employer (excepting in any such case any assets retained by such employer incident to the liquidation of his obligations) and in respect to which the division finds that immediately after such change all portions of such business of the predecessor are continued without interruption solely by such successors, each such individual, organization, or employing unit shall stand in the position of such predecessor with respect to the proportionate share of the predecessor's separate account, actual contribution and benefit experience and annual payroll as determined by the portion of the predecessor's taxable payroll applicable to the portion of the business acquired, and each such individual, organization or employing unit shall be liable for current or delinquent contributions, interest and penalties of the predecessor in the same relative proportion.

§ 288.110. Thus, the issue for us to decide is whether Atlas Security and appellant comprise "two or more individuals, organizations, or employing units" that "acquired" substantially all of Atlas Security's business when the two businesses of Atlas Security were split in 1978. On this issue, the parties disagree as to the proper construction to give § 288.110. The Commission argues for a literal interpretation of the word "acquired" in the statute. Using a literal interpretation, the Commission argues that § 288.110 does not apply here because Atlas Security did not acquire the security business, but simply retained it after the paging business was transferred to appellant. Appellant argues for a broader interpretation of acquired under which interpretation Atlas Security's retention of its security business would entitle appellant to succeed to Atlas Security's employment contribution rate as a successor corporation to Atlas Security under § 288.110. In support of its claim, appellant relies on the holding in *KSD/KSD–TV, Inc. v. Labor and Indus. Rel. Comm'n,* 562 S.W.2d 346 (Mo. banc 1978).

### 1. The Holding in *KSD* Controls

In *KSD,* Pulitzer Publishing Company owned and operated both a newspaper business and a broadcasting business. For reasons irrelevant to this appeal, Pulitzer made a business decision to incorporate a wholly owned subsidiary, KSD/KSD–TV, Inc., to operate the broadcasting business while "retaining" its operation of the newspaper business. The Division denied KSD/KSD–TV

successor status and Pulitzer's employment contribution rate under § 288.110 and assigned it the higher new employer rate.

In affirming the decision of the Division, the Commission relied on a literal interpretation of the word "acquired" in § 288.110, which would not include mere "retention" and resulted in KSD being treated as a new employer under the statute. KSD appealed claiming that the word "acquired" in § 288.110 should not be given the literal reading employed by the Commission. In that regard, KSD argued that:

'In our situation nothing has changed but the form. There is no doubt but that if two new companies had acquired respectively the newspaper and broadcasting business of Pulitzer they could succeed to the Pulitzer rate. It seems an absurd statutory construction to hold that while that can occur, when a company transfers a severable portion of its business to a wholly owned subsidiary, the subsidiary cannot succeed to the parent's rate. We believe when 288.110 is read in its entirety, the legislative intent and statutory scheme clearly would provide that succession should occur in a factual situation like ours.'

*KSD/KSD–TV, Inc.*, 562 S.W.2d at 348. The Missouri Supreme Court agreed with Pulitzer that giving § 288.110 a literal reading would cause an unreasonable result, stating:

[T]he word 'acquired' should not be given such a restrictive legal effect. A statute should not be given a construction which would cause an unreasonable result. *State ex rel. Dravo Corporation v. Spradling*, 515 S.W.2d 512, 517 (Mo.1974). We believe the practical effect of [KSD's incorporation and its undertaking of the broadcasting business] was to transform a relationship wherein Pulitzer operated both the newspaper and broadcasting business into a relationship wherein Pulitzer operated the newspaper business and KSD/KSD–TV operated the broadcasting business. The fact that Pulitzer did not *acquire* the newspaper from a third party on [the date of KSD/KSD–TV's incorporation and undertaking of the broadcasting business], is, in our opinion, of minimal

consequence. We hold that both should be given the [successor] rate. To hold otherwise would be to reach an unreasonable result.

*Id.* at 349 (emphasis supplied).

The facts here closely resemble those in *KSD*. In both cases, a single corporation initially conducted two separate businesses. The single corporation then reorganized into two corporations, with each corporation conducting one of the two businesses. The Commission argues that *KSD* can be distinguished from the case at bar and is not controlling. The Commission first contends the cases are distinguishable because *KSD* involved a parent/subsidiary corporate relationship and the case at bar involves a brother/sister corporate relationship. The Commission also attempts to distinguish the two cases by pointing out that in *KSD* the successor corporation acquired its assets from its predecessor corporation, whereas here the appellant obtained its assets from Marvin Britton.

### a. Difference in Corporate Reorganization Insignificant to § 288.110 Determination

Respondent contends that the case at bar and *KSD* are distinguishable because *KSD* involved a corporate reorganization resulting in a parent/subsidiary corporate relationship and the case at bar involves a resulting brother/sister corporate relationship. Respondent argues that control is a relevant and determinative issue in deciding whether to grant appellant successor status under § 288.110. In arguing for this distinction, respondent contends that the corporate form after the reorganization impacts the amount of control exercised by the predecessor corporation over the spin-off corporation. Respondent claims the corporate form makes the cases distinguishable because a parent corporation, like Pulitzer, owns and controls its subsidiary, but a brother corporation, like Atlas Security, has no control over its sister corporation. Respondent contends that because control of the spin-off corporation by the predecessor corporation is greater in a parent/subsidiary corporate relationship than in a brother/sister corporate relationship,

this case and *KSD* are distinguishable and appellant should not be granted successor status. We find that no distinction can be drawn based on corporate form and the resulting control by one corporation over the other.

In reviewing *KSD*, we find the seminal issue was not control, but what entity was "operating" the businesses after the reorganization. Here, after the corporate spin-off, Atlas Security and appellant, two separate corporate entities, began operating the security and paging businesses respectively, which is substantially what occurred in *KSD*. It is ironic that the Commission attempts to distinguish *KSD* from the case at bar by asserting that Atlas Security has less control over appellant than Pulitzer had over KSD/KSD–TV, Inc. It is ironic because in *KSD* the Commission argued that because Pulitzer **had complete control** over KSD/KSD–TV, Inc., the situation did not fit within the language or intent of the second sentence of § 288.110. The Commission now argues the opposite here—that less control would distinguish the case at bar from *KSD* and defeat appellant's claim for successor status under § 288.110. The inconsistency is not lost on us.

A corporate reorganization resulting in brother/sister corporations splitting and continuing the businesses initially conducted by one corporation would logically more closely resemble the typical § 288.110 "acquisition" where two completely separate corporations without any common control acquire substantially all of the business of a corporation than does a reorganization resulting in parent/subsidiary corporations where the parent corporation owns, controls and manages the spin-off corporation. It is reasonable and logical to conclude that a corporate reorganization resulting in a brother/sister corporate relationship would fit under the second sentence of § 288.110 if a corporate reorganization resulting in a parent/subsidiary corporate relationship does. The less control the predecessor corporation has over the spin-off corporation, the more it resembles the typical acquisition envisioned by § 288.110 and thus, the stronger the argument for granting successor status to the spin-off corporation. In other words, if successor status under

§ 288.110 was proper in the *KSD* situation, it certainly is proper here.

Assuming, *arguendo,* that the amount of control that one corporation exercises over the other was central to the Supreme Court's decision in *KSD,* here, just as there, there is common control between the two corporations. In *KSD,* Pulitzer spun off a subsidiary corporation, which it owned and controlled. Likewise, Atlas Security spun off a sister corporation to create a brother/sister corporate relationship with appellant, whereby Marvin Britton owned the majority of stock of both of the separate and distinct legal entities. Thus, in both cases, the spin-off corporation and the original corporation were under common control. In the final analysis, we agree with appellant's contention that for purposes of applying § 288.110, the resulting corporate form created by the reorganization in this case cannot be distinguished from the corporate form and relationship in *KSD.* The practical effect of the two corporate reorganizations for § 288.110 treatment is no different. In both situations, the two businesses that had been conducted under one corporate entity were subsequently split and conducted by two separate corporations that were under some form of common control and management.

**b. Acquisition of Assets From Third Person, not Predecessor Corporation, Insignificant to § 288.110 Determination**

Respondent next attempts to distinguish the two cases by noting that unlike in *KSD,* appellant here did not obtain its "assets" from the predecessor corporation, Atlas Security, but rather from Britton himself. Appellant argues that although the respondent and appeals referee did indeed make such a finding, it was based on a misunderstanding of the testimony and is not supported by competent and substantial evidence. This is the issue appellant designates as his Point I. We find this issue to be a red herring.

Section 288.110 provides that successor status is achieved when two or more organizations acquire "substantially all of the **business** of an employer ...." § 288.110 (emphasis added). "The term 'business' means a commercial or industrial enterprise.

It refers primarily to the activities, processes or transactions which make up a commercial or industrial enterprise rather than the physical assets which may be used in the enterprise." *Chief Freight Lines Co. v. Industrial Commission*, 366 S.W.2d 48, 51 (Mo.App. 1963). Respondent makes no claim that appellant did not succeed to the activities, processes or transactions of Atlas Security's paging business or, in other words, did not acquire the "business". The statute, in order to be applicable, does not require acquisition of "assets", but acquisition of the "business". Thus, we find respondent's attempt to distinguish *KSD* from the case at bar on the basis of acquisition of assets from a third party to be without merit.

## 2. Treatment of Separate Corporations for Tax Purposes Does not Affect § 288.110 Determination

Respondent also contends that § 288.110 should not apply to grant appellant successor status to Atlas Security's unemployment contribution tax rate because separate corporations are treated separately for tax purposes. Respondent seems to be arguing that you cannot have your "cake and eat it too." In other words, respondent argues that appellant could not avail itself of the tax and liability benefits associated with separate corporations while disavowing the burdens of separate unemployment contribution tax rates. We fail to see what relevance this issue has to our decision whether appellant should succeed to Atlas Security's employment contribution rate as a successor corporation under § 288.110. Respondent's argument here is without merit because the issue presented in the case at bar does not concern taxation, but whether the appellant should be treated as a successor corporation to Atlas Security under § 288.110. Respondent cites us to no authority to support its argument.

Further, this precise issue would have logically presented itself in *KSD*. If this were an issue the determination of which was critical to a decision as to whether successor status should be granted to KSD/KSD–TV, Inc., under § 288.110, the Missouri Supreme Court would have addressed it. Since it did not, we can infer that the Supreme Court did not believe it was a determinative issue in granting KSD/KSD–TV, Inc., successor status under § 288.110. We reach the same conclusion here.

### Conclusion

 We reverse the decision of the Labor and Industrial Relations Commission affirming the Division of Employment Security's classification of appellant Atlas Mobilfone as a new employer, rather than as a successor corporation of Atlas Security under § 288.110. We remand this cause to the Circuit Court of Cole County with directions to enter its order, ordering the Labor and Industrial Relations Commission to enter its order establishing the appellant's unemployment tax contribution rate under § 288.110 at the rate of a successor corporation of Atlas Security in conformity with this opinion.

All concur.