**Louis VanDRIE, Jr., Appellant,**

v.

**PERFORMANCE CONTRACTING AND DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 56094.**

Missouri Court of Appeals, Western District.

May 25, 1999.

Joel E. Anderson, Columbia, MO, for appellant.

Sharon A. Willis, Government Counsel, Kansas City, MO, for respondent.

Before: SPINDEN, P.J., EDWIN H. SMITH and RIEDERER, JJ.

RIEDERER, J.

Appellant Louis VanDrie, Jr., appeals from the decision of the Labor and Industrial Relations Commission ("Commission") affirming the Appeals Tribunal's decision that Appellant left work voluntarily without good cause and therefore was disqualified from receiving unemployment benefits. Because we do not find that Appellant had good cause, attributable to his work or to his employer, to quit his job voluntarily, we affirm the decision of the Commission.

### Factual and Procedural History

Appellant accepted an assignment through Local 204 of the Asbestos Workers Union to work for Performance Contracting of Kansas as an emergency insulator mechanic. Appellant was informed by the union that there would not be a per diem paid for the job and that the job would last roughly a week. Appellant told the union that would not be a problem.

Since Appellant lived in Columbia, Missouri, approximately 120 miles from the job site in Sibley, Missouri, Appellant made arrangements to stay with his brother who lived approximately twenty-five miles from Sibley. Appellant's brother told him he could stay for a week, but after that the brother was expecting out of town guests, and Appellant would have to make other arrangements.

Appellant began work on Monday October 13, 1997. On Thursday of that week, Performance Contracting told Appellant that the work would not be completed on Friday and that they would probably finish the following Tuesday. After the first week, Appellant began commuting daily from Columbia to Sibley. The job did not end on Tuesday of that week, and by Thursday, it appeared that the job would extend into a third week. Appellant incurred expenses because of the travel required, and he was experiencing back pain from a preexisting injury aggravated by the long rides to and from Sibley. Appellant missed work on Friday because of a previously scheduled appointment. During the weekend after the second week of work, Appellant called the employer on the phone and left a message on the employer's answering machine that the job was not working out, apparently meaning he would not return to work. Appellant did not return to work. Appellant had worked nine days.

Appellant sought unemployment benefits from the Missouri Division of Employment Security ("Division"). The Division denied his claim, stating that Appellant left work "voluntarily without good cause attributable to his work or employer." The Division's decision was affirmed by the Appeals Tribunal. Appellant appealed the decision to the Commission. On March 4, 1998, a hearing was held and on June 15, 1998, the Commission issued an order affirming the Appeals tribunal and adopting the decision of the Appeals Tribunal.

## Standard of Review

■ Appellate review of Commission decisions regarding unemployment compensation benefits is governed by § 288.210,[1] which provides in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

We review the case under § 288.210 which limits this court's review to questions of law, unless the facts as found by the Commission are not supported by competent and substantial evidences or were procured by fraud. *Custom Furs v. Hopper Furs, Ltd.*, 923 S.W.2d 505, 506 (Mo.App. 1996). We review the evidence in the light most favorable to the Commission and disregard all unfavorable evidence. *Id.*

### I.

■ Appellant claims in his sole point that the Commission erred in denying him unemployment compensation by finding that he voluntarily left his employment without good cause. Section 288.050 governs the denial of unemployment benefits. It provides in pertinent part:

> 1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds: That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer....

Whether Appellant's reason for leaving his employment constituted "good cause" is a legal issue on which we do not defer to the Commission's determination below. *Sokol v. Labor and Industrial Relations Commission*, 946 S.W.2d 20, 26 (Mo.App.1997).

The claimant bears the burden of showing that his voluntary resignation resulted from good cause attributable to his work or employer. *Hessler v. Labor and Industrial Relations Commission*, 851 S.W.2d 516, 518 (Mo.1993). The phrase "good cause" is not defined and is judged by the facts of each case. *Sokol*, 946 S.W.2d at 26. "Good cause" is determined by the objective standard of what a reasonable person would do in the same or similar circumstances. *Id.* "Good cause" for voluntary unemployment is limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in terminating employment." *Id.* (citing, *Charles v. Missouri Division of Employment Security*, 750 S.W.2d 658, 661 (Mo.App.1988). "To constitute good cause, the circumstances motivating an employee to voluntary terminate employment must be real not imaginary, substantial not trifling, and reasonable not whimsical and *good faith* is an essential element." *Belle State Bank v. Industrial Commission*, 547 S.W.2d 841, 846 (Mo. App.1977). Therefore, to determine whether Appellant had good cause attributable to his work or to his employer to voluntarily terminate his employment, we must look at two factors: 1) reasonableness and 2) good faith. *Id.*

Appellant first argues that he had good cause to voluntarily terminate his employment because his employer extended the duration of the job beyond the period for which Appellant had lodging accommodations. The extension of the job required him to drive approximately 240 miles round trip each day and caused him to incur additional expenses. Appellant argues that he was told by his union that the job assignment was going to last for less than a week and that he would not be reimbursed for expenses. Appellant contends that he accepted the job offer because he knew he could stay with his brother who lived close to the job site. Christopher Cathlina, a field superintendent for the employer, testified at the hearing that the employer did not discuss with Appellant the duration of the job or the payment of costs. Mr. Cathlina testified that the only agreement the employer made with Appellant concerned the rate of pay. Mr. Cathlina also testified that Appellant never told him that he had a problem with accommodations until Appellant left a message on Mr. Cathlina's answering machine that things were not working out. Appellant agreed that the phone message was the first time he had told his employer there was a problem. "To demonstrate good faith, a claimant must show that before taking the 'drastic' measure of termination of employment, he or she attempted to remedy the situation or dispute." *American Family Ins. Co. v. Hilden*, 936 S.W.2d 207, 210–11 (Mo.App.1996). While Appellant did testify that he priced hotels in Sibley, he did not talk to his employer about the situation before quitting. Therefore, Appellant's claim of good cause due to his expenses and travel was not made in good faith. Further, absent discriminatory or unfair or arbitrary treatment, mere dissatisfaction with working conditions does not constitute good cause for quitting employment unless the dissatisfaction is based upon a substantial change in wages or working conditions from those in force at the time the claimant's employment commenced. *Mitchell v. Division of Employment Security*, 922

S.W.2d 425, 428 (Mo.App.1996). Appellant knew the amount of his wage and where the job was located when his employment began. Neither the working conditions nor the distance to his job nor the wages changed. Also Appellant testified that it was common for jobs to be extended and that "ordinarily [it] is a good thing." From the employer's perspective, Appellant was getting more work; and the employer had no knowledge of any travel problems. It was not reasonable for Appellant to quit the job before attempting to work out his travel problems with his employer. What Appellant did was not what a reasonable person would do in the same or similar circumstances. *Sokol,* 946 S.W.2d at 26.

Appellant next argues that the long drive aggravated a preexisting injury to his back. A physical disability either caused or aggravated by working conditions may be "good cause" for terminating employment. *Diversified Asphalt, Inc. v. Labor and Industrial Relations Commission,* 622 S.W.2d 716, 719 (Mo.App.1981) . The claimant bears the burden of establishing both the disability and the causal connection between the disability and employment. *Id.* Mr. Cathlina testified at trial that Appellant never indicated that he was having any physical problems. Since Appellant never told his employer of his aggravated back injury before quitting, his claim of good cause with regard to his back injury was not made in good faith. Appellant testified that his back injury was aggravated by driving to work, not by the work itself. Appellant testified that "I—I can do—I can work and that's fine. But I can't ride in a car for extended periods." He also testified that, "Well, let's just say it was really tearing my back up. This— all this riding around." Appellant never claimed that the job itself caused aggravation to his back injury. He only claims that traveling to and from the job caused him pain. Furthermore, Appellant did not meet his burden of establishing the causal connection between ⌐his preexisting back

injury and the aggravation allegedly caused by his employment. Appellant did not submit any medical evidence to support his claim. Because Appellant's claims were neither reasonable nor made in good faith, and because neither of Appellant's claims were attributable to his work or his employer, we find that Appellant did not have good cause attributable to his work or to his employer.

The decision of the Commission is affirmed.

EDWIN H. SMITH, J., concurs.

SPINDEN, J., concurs in separate opinion.

SPINDEN, Judge, concurring.

I concur with the majority in everything but the stated scope of review. I write separately to express doubt that this court's review is limited, as the majority suggests, "to questions of law, unless the facts as found by the Commission are not supported by competent and substantial evidences or were procured by fraud."

No doubt, this is what the General Assembly intended in section 288.210, RSMo Supp.1998, which endeavors to restrict this court's review to four stated grounds "and no other." This, however, is an attempt to limit the scope of judicial review of administrative agency's actions guaranteed by Mo. Const. art. V, section 18 (1945).

Article V, section 18, establishes the "minimum standard for judicial review of administrative decisions." *Jarvis v. Director of Revenue,* 804 S.W.2d 22, 25 (Mo. banc 1991). The General Assembly may grant the judiciary the power to engage in a broader review, so long as the expanded power does not conflict with the federal or state constitutions. *State ex rel. St. Louis Public Service Company v. Public Service Commission,* 365 Mo. 1032, 291 S.W.2d 95, 102 (1956); *State ex rel. Marco Sales, Inc. v. Public Service Commission,* 685 S.W.2d 216, 218 (Mo.App.1984).

The General Assembly cannot limit our review in the manner set forth in section 288.210 because, as the Supreme Court has instructed:

[I]rrespective of what scope of judicial review of administrative decisions was provided by existing or future statutes dealing with specific agencies, the scope of review would in any event be as broad as that minimum review provided for by the constitution. [A]ny statute providing for a narrower scope of review was no longer effective because of the constitutional provision noted.

*Public Service Commission*, 291 S.W.2d at 101. Section 288.210 endeavors to limit our review to the four grounds stated. Article V, section 18, mandates that our review "shall include the determination whether [an administrative agency's final decisions, findings, rules, or orders] are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." Only the most esoteric of issues would not be subsumed within these two grounds. The Constitution certainly authorizes us to review on more grounds than the four which the General Assembly enumerated in section 288.210.

With that clarification, I concur with the majority's opinion.