Sharon Alice RODRIGUEZ, Appellant,

v.

OSCO DRUG, Defendant;

Division of Employment Security,
Respondent.

No. WD 64385.

Missouri Court of Appeals,
Western District.

July 5, 2005.

Sharon A. Rodriguez, Lee's Summit, MO, pro se appellant.

Alan J. Downs, Esq., Jefferson City, MO, for respondent.

Before THOMAS H. NEWTON, P.J., HAROLD L. LOWENSTEIN, and PATRICIA A. BRECKENRIDGE, JJ.

THOMAS H. NEWTON, Presiding Judge.

Ms. Sharon A. Rodriguez files this *pro se* appeal from the Labor and Industrial Relations Commission's (Commission) decision denying her claim for unemployment benefits. The Commission found that she had voluntarily left her employment without good cause. Because we find that Ms. Rodriguez's action was reasonable and in good faith, we hereby reverse and remand.

According to the decision of the Employment Security Appeals Tribunal, which the Commission adopted and affirmed, Ms. Rodriguez worked as a pharmacy technician for Osco Drug for more than two years. When she was hired, the company's stated policy was to treat all employees fairly and equitably, and while work schedules, posted weekly, could be changed due to unforeseen circumstances, no employees were to be given a "split shift." Such shifts would entail a workday broken by a period of more than one hour. In addition, excessive tardiness or absenteeism was not allowed, and employees were expected to perform the required quality and amount of work. Ms. Rodriguez's regular schedule was 11:00 a.m. to 7:00 p.m., Monday through Friday.

The Commission found that Ms. Rodriguez was frequently called in to work at 8:00 a.m. because other employees were late or failed to show up. One employee, in particular, would disappear for months at a time and then was allowed to return at will. And when this employee did show up, Ms. Rodriguez would be sent home and then would have to return to work later in the day. Other employees, who did not share Ms. Rodriguez's work ethic, were not disciplined for making personal telephone calls, reading books or spending their time coloring. Ms. Rodriguez spoke to the pharmacy manager about these problems and was told they would be corrected, but nothing was done. She also expressed her concerns to the store manager and the district manager; again, nothing was done. Ms. Rodriguez was disturbed by the compact discs the pharmacy manager brought to play in the pharmacy, because the discs contained foul language. When Ms. Rodriguez told the pharmacy manager about her concerns, he told her not to listen to the lyrics and continued to play the music.

On February 23, 2004, Ms. Rodriguez telephoned an insurance company on a customer's behalf and was told by the pharmacy manager to hang up because there was no time for that. She complained that he was taking her to task for making a phone call on a work-related matter, when other technicians were not being disciplined for coloring. Ms. Rodriguez gave the manager a four-page report, again outlining her concerns about his management practices. The manager did not indicate that he was willing to make any changes, so she gave the employer two weeks' notice. Her last day on the job was March 9, 2004.

The Commission specifically found that Ms. Rodriguez resigned because of what she considered to be unfair treatment, and that her primary reason was the pharmacy manager's behavior on February 23. The Commission also characterized the pharmacy manager's actions as "poor management," "inappropriate" and "inconsistent," and acknowledged that Ms. Rodriguez had legitimate concerns about his behavior and the behavior of other employees. Yet, the Commission also determined that the average worker would not choose to become unemployed because of such behavior and thus, that Ms. Rodriguez's concerns "did not rise to the level of good cause for quitting the job for purposes of the Missouri Employment Security Law."

■ Ms. Rodriguez claims on appeal that she had good cause for voluntarily terminating her employment, but her brief is procedurally defective for containing an insufficient jurisdictional statement, Rule 84.04(b),[1] an argumentative statement of facts, Rule 84.04(c), a deficient statement of the point relied on, Rule 84.04(d)(2), and an argument that fails to set forth the applicable standard of review, Rule 84.04(e). While we could dismiss her appeal for these procedural defects, we will consider her appeal on the merits, *ex gratia*, to ensure that there will be no manifest injustice from such a dismissal. *Ferrara v. Wells*, 728 S.W.2d 718, 719 (Mo. App. E.D.1987).

Section 288.050[2] governs whether a claimant is disqualified from unemployment benefits. It provides, in relevant part:

1. Notwithstanding the other provisions of this law, a claimant shall be

---

1. Rules citations are to the Rules of Civil Procedure (2005).

2. Statutory references are to RSMo. (2000) and the Cumulative Supplement (2004), unless otherwise indicated.

disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer.

§ 288.050.1(1).

■ There is no question here as to whether Ms. Rodriguez left work voluntarily, thus we are not required to defer to the Commission's factual or credibility findings. *Quik 'N Tasty Foods, Inc. v. Division of Employment Security*, 17 S.W.3d 620, 625 (Mo.App. W.D.2000). Whether her reason for leaving employment constituted good cause attributable to such work or to her employer is a legal issue on which we do not defer to the Commission's determination. *Lashea v. Fin–Clair Corp.*, 30 S.W.3d 237, 240–41 (Mo.App. E.D.2000).

■ Ms. Rodriguez has the burden of proving that her voluntary termination resulted from good cause attributable to her work or employer, and in determining whether she has met this burden, we look to section 288.020, which requires that our employment security law be liberally construed to further the public policy of benefiting persons who become unemployed through no fault of their own. *Quik 'N Tasty Foods*, 17 S.W.3d at 625. Those provisions of section 288.050 disqualifying claimants from receiving unemployment benefits are construed strictly and narrowly in favor of finding the claimant entitled to compensation. *Id.* at 626.

■ "Good cause" has no fixed meaning in the context of determining eligibility for unemployment benefits and is judged on a case-by-case basis. *Id.* We do apply an objective standard to this determination, however, and look to what a reasonable person would do in the same or similar circumstances. *Fin–Clair Corp.*, 30 S.W.3d at 241. Our courts interpret "good cause" as:

> cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment.... [Good cause] is positive conduct which is consistent with a genuine desire to work and be self-supporting.... [T]he circumstances motivating an employee to voluntarily terminate employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element.

*Hessler v. Labor and Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc. 1993) (citation omitted). To establish good faith, Ms. Rodriguez must show that she made an effort to resolve the dispute before she resorted to the drastic remedy of quitting. *Fin–Clair Corp.*, 30 S.W.3d at 241. In sum, good cause has two elements, i.e., reasonableness and good faith. *Quik 'N Tasty Foods*, 17 S.W.3d at 626.

■ The situation that Ms. Rodriguez faced in her workplace was a boss who (i) held her to a higher standard than other employees who were permitted to play and attend to personal matters on the job without reprimand, (ii) often required her to work split shifts to fill in for employees who were freely allowed to abuse the company's attendance and timeliness policies, and (iii) refused to honor her request about patently objectionable music. She was hired to work an eight-hour shift and ended up regularly working split shifts involving thirteen- and fourteen-hour days over a period of two years. Just because Ms. Rodriguez was paid for every hour she worked does not mean that she was not

subjected to working conditions that did not exist when she was hired and that her life was not thoroughly disrupted by having to fill in for tardy and absent employees, go home and then return to work her regular shift. Moreover, because other employees were allowed to play during work hours, tasks that were not completed during their shifts had to be handled by those, like Ms. Rodriguez, whose shifts followed, and they would have to address the unfinished work in addition to their own tasks.

Playing favorites with some employees is not just poor management, it is demoralizing to those who are not favored and creates a workplace environment that the average, conscientious worker would find untenable. In isolation, each instance of poor management and behavior on the part of the pharmacy manager may not in itself have given Ms. Rodriguez good cause to terminate her employment, but in combination they contributed to an obvious personal conflict that would be sufficiently aggravating to the reasonable worker to supply good cause. *See Smith v. Labor and Indus. Relations Comm'n*, 656 S.W.2d 812, 817 (Mo.App. W.D.1983) (personal conflicts with employer may be "sufficiently aggravated" to supply good cause for terminating employment or refusing new employment by that employer). This is particularly so where the conscientious employee is working in a customer-service business involving critical health care issues.

We have stated before that the treatment of an employee by her employer or supervisor may be so arbitrary and

unacceptable to a person of ordinary reasonable sensitivity, that the employee would be justified in quitting the employment. *Id.* And while we have held that a single instance of rudeness on the part of a supervisor would not motivate a reasonable and prudent person to abruptly quit a paying job, *Nell v. Fern–Thatcher Co.*, 952 S.W.2d 749, 754 (Mo.App. W.D.1997), in this case, the unfair treatment accorded Ms. Rodriguez and the disruptive hours she was required to work were chronic and existed over a long period of time. Further, while mere dissatisfaction with working conditions does not constitute good cause for quitting employment, unfair or arbitrary treatment can constitute good cause. *VanDrie v. Performance Contracting and Div. of Employment Sec.*, 992 S.W.2d 369, 373 (Mo.App. W.D.1999); *Mitchell v. Division of Employment Sec.*, 922 S.W.2d 425, 428 (Mo.App. S.D.1996).[3] The Division of Employment Security (Division) concedes that Ms. Rodriguez "clearly established" that she had been subjected to unfair treatment. Given its duration and that it manifested in a substantial change in working conditions, the employer's unreasonable behavior provoked a reasonable response, and Ms. Rodriguez was entirely justified in quitting. *VanDrie*, 992 S.W.2d at 373.

In support of its argument that Ms. Rodriguez did not have good cause on these facts to voluntarily terminate her employment, the Division cites *Citizens Bank of Shelbyville v. Industrial Comm'n*, 428 S.W.2d 895 (Mo.App.1968). In that case, the claimant had been given the cold shoulder for one week by her supervisor,

---

**3.** In this regard, the *VanDrie* and *Mitchell* courts state,

[A]bsent discriminatory or unfair or arbitrary treatment, mere dissatisfaction with working conditions does not constitute good cause for quitting employment unless

the dissatisfaction is based upon a substantial change in wages or working conditions from those in force at the time the claimant's employment commenced.

*VanDrie*, 992 S.W.2d at 373; *Mitchell*, 922 S.W.2d at 428 (citation omitted).

and the court, in denying her unemployment benefits, stated, "the Employment Security Law was designed to avoid the menace of economic insecurity, not to make work pleasant for employees.... We cannot say that the lack of cordiality at [claimant's] job constituted external pressure so compelling that a reasonably prudent person would be justified in giving up employment." *Id.* at 900–901. Ms. Rodriguez, however, was not dealing with a mere week-long problem with her boss nor was the problem confined to a matter of cordiality, and for these reasons the case can be distinguished.

The Division also argues that "in most cases the reasonable thing to do is to find another job first, rather than to voluntarily join the ranks of the unemployed. The reasons to quit without first finding another job must be truly compelling for the reasonable person to quit and become totally unemployed." The Division has not cited any authority, nor have we been able to locate any, that supports this principle. No Missouri court has required an employee, who demonstrates good cause for quitting a job, to find another job before quitting or otherwise risk disqualification for unemployment compensation.

The Division further claims that Ms. Rodriguez did not show good faith in that she gave her two-week notice on the same day that she submitted a four-page report to the pharmacy manager, outlining the concerns she had been expressing to him over the previous two years. According to the Department, Ms. Rodriguez gave "no time to see if her complaints and suggestions would have an impact." As noted above, however, Ms. Rodriguez's complaints to the pharmacy manager and up the chain of command had gone unheeded, and thus, she would have had no expectation that complaining about being unfairly reprimanded for being on the phone on February 23 would have been redressed. We have stated before that where management has been unresponsive to earlier expressions of concern, good faith does not always require a complaint by the employee. *Cooper v. Hy-Vee, Inc.,* 31 S.W.3d 497, 504–05 (Mo.App. W.D.2000).

Ms. Rodriguez had good cause attributable to the workplace and her employer to voluntarily terminate her employment. Accordingly, we reverse the Commission's ruling and remand for calculation and award of the benefits Ms. Rodriguez is due.

HAROLD L. LOWENSTEIN and PATRICIA A. BRECKENRIDGE, JJ., concur.