Troy **FORD**, Appellant,

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI, et al., Respondents.**

**No. WD 45556.**

Missouri Court of Appeals,
Western District.

Sept. 29, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Nov. 24, 1992.

Samuel I. McHenry, Kansas City, for appellant.

Sharon Ann Willis, Kansas City, for respondent Missouri Div. of Employment Sec.

James B. Crenshaw, Jefferson City, for respondent Labor and Indus. Relations Com'n of Missouri.

Before TURNAGE, P.J., and
BRECKENRIDGE and HANNA, JJ.

PER CURIAM.

The Labor and Industrial Relations Commission ruled that Troy Ford was ineligible to receive unemployment insurance benefits because he had voluntarily left his employment without good cause. Ford now appeals, claiming that there was insufficient evidence to support the decision.

The judgment is reversed and remanded.

Troy Ford was employed by Larson Transport America, Inc., as a truck driver. On January 11, 1990, he was arrested in Rock Island, Illinois, where he remained incarcerated until January 17, 1990, when he was extradited to Missouri. Ford remained incarcerated in Missouri until March 6, 1990, when he was released on bond. Ford contacted his employer upon his release and was told that he had been discharged from employment by a "voluntary" resignation.

Following his termination, Ford filed a claim for unemployment insurance benefits. Ford's claim was denied by the Division of Employment Security on the ground that Ford had voluntarily left his employment without good cause attributable to his work or employer. Ford then obtained a review by the Appeals Tribunal and testified at an evidentiary hearing on his claim.

Ford stated that, prior to his termination, he became aware of a warrant for his arrest on charges of parental kidnapping after experiencing a series of delays in an ongoing court proceeding. Ford testified that he informed his supervisor of the outstanding warrant before leaving on the trucking run which led to his arrest in Illinois. According to Ford, his supervisor responded by telling him to "call" if he got arrested during the trip.

Ford testified that, the day after his arrest, he notified a Larson supervisor of his situation and the supervisor told Ford to contact him again after his extradition to Missouri. On January 17, the day he returned to Missouri, Ford again notified a Larson supervisor of his situation. Ford acknowledged that, during these conversations, there was no agreement that Larson would hold his job open until his release. Instead, Ford was merely told to notify them again when he got out of jail.

Jerry Capes, a Larson representative, also testified at the hearing. Capes opined that the employer decided to terminate Ford because Ford had been given plenty of time before the arrest "to take care of business" and Ford knew there was a warrant for his arrest when he left on the trucking run which led to his incarceration.

Following the hearing, the Appeals Tribunal affirmed the denial of benefits, concluding that Ford's "failure to appear for work on account of his incarceration represents a voluntary resignation of his employment under the Missouri Employment Security Law." Ford appealed this decision to the Labor and Industrial Relations Commission, which affirmed the judgment of the Appeals Tribunal. Ford then filed a petition for review by the circuit court, which affirmed the judgment of the Commission.

Ford presents two points on appeal, both of which present essentially the same claim, namely, that there was insufficient evidence to support a determination that he voluntarily left his employment. Ford argues that incarceration alone, without any evidence that he was convicted or guilty of the crime he was accused of committing, does not constitute a "voluntary" departure from his employment.

■ On appeal of an unemployment compensation decision, the decision of the Commission is reviewed not the judgment of the circuit court. *Powell v. Division of Employment Security*, 669 S.W.2d 47, 50 (Mo.App.1984). The record is reviewed in the light most favorable to the Commission's findings, together with all reasonable inferences in support of those findings.

*Fruehauf Div., Fruehauf Corp. v. Armstrong*, 620 S.W.2d 67, 68 (Mo.App.1981). Deference must be given to the Commission, as the trier of fact, in its assessment of credibility. *Id.*

The statute under which Ford was disqualified from receiving unemployment compensation benefits is § 288.050, RSMo Cum.Supp.1991, which states in pertinent part:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages for work insured under the unemployment compensation laws of any state equal to ten times his weekly benefit amount if the deputy finds:

(1) That he has left his work voluntarily without good cause attributable to his work or to his employer....

■ The purpose of the Missouri legislature in adopting the Employment Security Law, articulated in § 288.020.1, RSMo 1986, is to provide for the "compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." While the statutory provisions for benefits for persons unemployed through no fault of their own are to be liberally construed, *Missouri Div. of Employment Sec. v. Labor & Indus. Relations*, 651 S.W.2d 145, 148 (Mo. banc 1983), the limitations in § 288.050, RSMo Cum.Supp.1991, which except certain claimants from benefits, must be strictly construed. *Bussmann Mfg. Co. v. Industrial Comm'n of Missouri*, 327 S.W.2d 487, 491 (Mo.App.1959). In interpreting such statutes, Missouri courts "have required that an employee not have *caused* his dismissal by his wrongful action or inaction or his choosing not to be employed." *Missouri Div. of Employment Sec. v. Labor & Indus. Relations*, 651 S.W.2d at 149 (original emphasis).

In determining whether a claimant's incarceration constitutes a "voluntary" departure from employment without good cause, neither party cites, nor did the court locate, any Missouri precedent on this is-

sue. However, in the case of *Stanton v. Missouri Div. of Employment Sec.*, 799 S.W.2d 202 (Mo.App.1990), this court has dealt with the analogous issue of whether an employee's absence due to incarceration should result in a denial of benefits on the ground of employee misconduct. In *Stanton*, the employee was terminated for excessive absenteeism after he was incarcerated in the municipal corrections facility for a conviction of driving without a license. This court held that a claimant's deliberate, conscious decision to violate the law, which renders him unable to work because of a resulting incarceration, disqualifies him from receiving benefits. 799 S.W.2d at 205.

■ Other jurisdictions have focused upon the criminal activity which precipitated the arrest as determinative of whether incarceration constitutes a "voluntary" departure from employment without good cause. Obviously, getting arrested and thrown into jail is not, in itself, a voluntary act. However, if a court concludes that the claimant did, in fact, commit the crime which led to his imprisonment, that violation of the law is considered to be the voluntary act which led to his departure from employment. *See, e.g., Johnson v. State Dep't of Indus. Relations*, 447 So.2d 747, 749 (Ala.App.1983); *Betancourt v. Ross*, 60 A.D.2d 719, 401 N.Y.S.2d 8, 9 (1977).

However, if there is no evidence in the record that the claimant actually committed the act for which he was incarcerated, this analysis no longer applies. Instead, courts from other jurisdictions have held that where a claimant has been incarcerated pending trial or his posting of bond, and there was never a conviction or other evidence of his guilt, then his absence or departure from work was not voluntary.

*See, e.g.,* Sparks v. Department of Employment & Training Serv., *531 N.E.2d 227, 228–29 (Ind.App.1988);* Parker v. Department of Labor and Employment Sec., *440 So.2d 438, 439 (Fla.App.1983);* Shoennagel v. Louisiana Office of Employment, *413 So.2d 652, 654 (La.App.1982).*

■ In the case at bar, there was no evidence in the record that Ford was actually convicted of the underlying charge of parental kidnapping. However, the commission of a crime is not the only conduct which courts will consider to be a "voluntary" departure from employment if such conduct results in an incarceration that makes the employee unavailable for work. In *Michalsky v. Unemployment Bd. of Review*, 163 Pa.Super. 436, 62 A.2d 113 (1948), an employee remained in jail for six months rather than pay court-ordered support to his wife and children. The Pennsylvania Superior Court concluded that such conduct constituted a voluntary departure from employment without good cause.

Like the failure to pay child support in *Michalsky*, the "voluntary" act which resulted in Ford's incarceration in the case at bar could be his failure to meet the obligations imposed by a court proceeding.[1] Ford's testimony at the hearing indicates that he was aware of an ongoing case involving charges against him for parental kidnapping. The testimony further indicates that Ford's employer had given him time off in October to take care of the matter, but it had not been disposed of because the date for the hearing kept being pushed back. Ford testified that he was aware of the case hearing dates, including numerous continuances of such dates, when he decided that he should take out the truck for his employer because he needed the money.

Thus, the record suggests that the arrest warrant itself may have been issued as a

---

1. Ford, in his brief attempts to thrust responsibility for his incarceration upon his employer, claims that the record shows only that he was "guilty of taking his employers foolhardy instructions as how to respond to an outstanding warrant." Such argument has no merit. The record does not show that Ford was told that he could not take care of the outstanding warrant. Instead it shows merely that he wanted to inform his employer that he might be arrested, and in response, his employer directed him to call if such an event occurred. Ford decided to drive because he needed the money, even though a warrant was outstanding. In addition, Ford failed to demonstrate any relevant consequence resulting from his being arrested while on the road rather than in Kansas City. His employer did not record a voluntary resignation until after Ford had been returned to Missouri and remained incarcerated for over a week.

result of Ford's failure to attend to pending court proceedings. However, the record is poorly developed on this question, as well as on the question of whether there was ever a conviction or other evidence of Ford's guilt of the underlying charge. Either circumstance, if proven, would constitute a voluntary resignation by Ford from his employment and result in his ineligibility for unemployment benefits.

A duty rests upon the agency administering the social security laws to exercise considerable responsibility "to explore the factual aspects of each situation which tend to prove or disprove the right of the claimant." *Smith v. Labor and Industrial Relations Comm'n*, 656 S.W.2d 812, 818 (Mo.App.1983). The duty which rested upon the agency to develop the pertinent facts was not performed here; therefore, it is appropriate to remand the case for a further development of the record. *Id.* at 819–20.

Accordingly, the judgment of the circuit court is reversed and the cause is remanded with directions that the circuit court reverse the decision of the Labor and Industrial Relations Commission and remand the case for the reception of further evidence.