Della E. COOPER, Appellant,

v.

HY–VEE, INC., Division of Employment Security, Respondents.

No. WD 58076.

Missouri Court of Appeals, Western District.

Nov. 14, 2000.

Kelly McClelland, Liberty, for Appellant.

Sharon Ann Willis, Kansas City, for Respondent.

RONALD R. HOLLINGER, Presiding Judge.

Della E. Cooper appeals the decision of the Labor and Industrial Relations Commission denying unemployment compensation benefits to her. She claims the Commission erred in deciding that she was ineligible for unemployment benefits on a finding that she quit her job voluntarily without good cause attributable to her work or to her employer. Because we find that Ms. Cooper quit voluntarily with good cause attributable to her employer, we reverse the decision and remand the case to the Commission.

**BACKGROUND**

Ms. Cooper, age 71, began employment with Hy–Vee, Inc. on August 10, 1996, to work in the meat and cheese department.[1] On January 18, 1999, upon her request, Ms. Cooper was transferred to work in the salad bar area.[2] After working approximately two months in that department, on March 15, 1999, her employer transferred her to work in the kitchen, and her hours were reduced from approximately 30 hours per week to 15 hours per week. The parties are not in agreement as to the reason for Ms. Cooper's transfer from the salad bar to the kitchen. The employer claims she was transferred because she complained of the cold and could not keep up with the other workers, and because she had a cold and her nose was dripping, which made it inconvenient for her to work in that position because of her physical condition. Ms. Cooper, on the other hand, claims she was transferred out of the salad bar area because it was the employer's intent to force her to quit. Because of the transfer to the kitchen, Ms. Cooper's hours were reduced. She requested additional hours but was told there were no more hours available for her to work. Because of the reduction in her hours, on March 10, 1999, Ms. Cooper filed for and began receiving partial unemployment benefits.[3] Shortly thereafter, when she began receiving partial unemployment benefits, Mr. Michael Basch, the Assistant Store Director for Hy–Vee, asked her what it would take for her to abandon her claim for such benefits. She advised him she wanted 32 hours per week, and he advised her that she could obtain additional hours by working as a courtesy clerk for the

---

1. The record contains no description of the work Ms. Cooper performed in the meat and cheese department.

2. As with the meat department, there is no description in the record as to her job duties in the salad bar.

3. Section 288.060.3, RSMo 1994.

store. This position, which commenced on April 19, 1999, involved sacking groceries, loading groceries into and out of carts for customers, and retrieving shopping carts from outside. Ms. Cooper continued in this position for approximately one month. She testified that the work was "too much" for her; she sometimes received help from a younger male co-worker when bringing in the shopping carts. Ms. Cooper did not complain to her employer about her difficulties with the courtesy job. On May 28, 1999, she terminated her employment with Hy–Vee.

On June 13, 1999, Ms. Cooper applied for full unemployment benefits with the Division of Employment Security.[4] On July 12, 1999, a deputy with the Division issued a determination that Ms. Cooper was disqualified for benefits because she left her work voluntarily without good cause attributable to her work or employer.[5] Ms. Cooper filed her appeal and a hearing was held before an Appeals Referee on August 12, 1999. The Referee concluded that Ms. Cooper was not disqualified because the employer had substantially changed her working conditions. Hy–Vee appealed to the Labor and Industrial Relations Commission, who reversed the decision of the Referee.

Ms. Cooper now appeals the decision of the Commission. She contends the Commission erred in finding that she quit her job without good cause attributable to her work or to her employer. She also claims that the findings of the Commission were not supported by competent and substantial evidence.

## STANDARD OF REVIEW

■ Our review of the Commission's decision denying unemployment compensation benefits is governed by Article 5, Sec-

tion 18, of the Missouri Constitution, which states in relevant part:

> All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record. Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

■ This is the minimum standard for judicial review of administrative decisions. *Jarvis v. Director of Revenue*, 804 S.W.2d 22, 25 (Mo. banc 1991). Where, as here, the Commission has reversed the findings and award entered by the Referee, we engage in a two-step process. *Davis v. Research Medical Center*, 903 S.W.2d 557, 570–71 (Mo.App.1995). In the first step, we examine the whole record, viewing the evidence and all reasonable inferences in the light most favorable to the award, to determine if it is supported by competent and substantial evidence. *Id.* At this stage, the court may disregard the credibility findings of the Referee because it is viewing the evidence in the light most favorable to the Commission's award. *Id.*

4.  Section 288.040, RSMo Cum.Supp.1999.

5.  Section 288.050, RSMo Cum.Supp.1999 provides, in part, for disqualification from benefits until wages have been earned equal-

ing ten times the weekly benefit if the claimant "has left work voluntarily without good cause attributable to such work or to the claimant's employer."

If there is competent and substantial evidence, in the second step, we determine whether the award is against the overwhelming weight of the evidence. *Id.* At this stage, the court still views the evidence in the light most favorable to the award, but considers also the evidence that opposes or is unfavorable to the award. *Id.* At this second stage, the credibility determinations of both the Referee and the Commission are considered. *Id.* Where the credibility determinations of the Commission differ from those of the Referee who heard live testimony, the evidence supporting the Commission's conclusion may be less substantial. *Id.* We are not, however, bound by the Commission's conclusions of law nor the Commission's application of law to the facts. *Bunch v. Div. of Employment Sec.*, 965 S.W.2d 874, 877 (Mo.App.1998); *Div. of Employment Sec. v. Taney County Dist. R-III*, 922 S.W.2d 391, 393 (Mo. banc 1996).

The Commission's determination of whether an employee voluntarily left her employment or was discharged is a factual determination, and we will defer to the Commission as to its finding that the claimant left her employment voluntarily. *Sokol v. Labor & Indus. Relations Comm'n*, 946 S.W.2d 20, 24 (Mo.App.1997). There is no issue herein as to whether Ms. Cooper left her employment voluntarily. The issue, instead, is whether she had good cause to leave her employment. Once the determination has been made by the Commission that the claimant left work voluntarily, then the question is whether the claimant had good cause to leave her employment; this is a question of law and we do not defer to the Commission's determination on the matter. *Id.* at 26; *Allen v. Green Ridge R-VIII School Dist.*, 892 S.W.2d 635, 637–38 (Mo.App. 1994). Therefore, we accept the factual findings of the Commission only if they are supported by competent and substantial evidence, and we review only whether the employee voluntarily left her employment for good cause. *Allen*, 892 S.W.2d at 637.

A claimant is not entitled to unemployment benefits if she voluntarily quits her job absent good cause attributable to her work or to her employer. *Wingo v. Pediatric and Adolescent Med. Consultants, Inc.*, 932 S.W.2d 898, 899 (Mo.App.1996). It is the claimant who bears the burden of proving that her voluntary termination resulted from good cause attributable to her work or employer. *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993); *O'Dell v. Div. of Employment Sec.*, 376 S.W.2d 137, 142 (Mo.1964). In determining whether Ms. Cooper has met this burden, we are guided by Section 288.020, RSMo 1994, which directs that the unemployment security law be liberally construed so as to further Missouri's public policy of "promoting economic security," in setting aside unemployment reserves to benefit persons unemployed through no fault of their own. *Sokol*, 946 S.W.2d at 23. It does not end there, however. We look also to Section 288.050.1(1), RSMo Cum.Supp.1999, which disqualifies an employee from receiving unemployment compensation when she voluntarily quits her job without good cause attributable to her work or employer. While Section 288.050 serves to disqualify some employees from receiving benefits, its disqualifying provisions are strictly and narrowly construed in favor of finding that an employee is entitled to compensation. *Sokol, supra.* The legislative objective is to encourage persons who are employed to remain employed by withholding benefits from those who quit their job without good cause. *Hessler*, 851 S.W.2d at 518.

For purposes of determining eligibility for unemployment benefits, "good cause" has no fixed or precise meaning, and is judged by the facts of each case. *Sokol*, 946 S.W.2d at 26. "Good cause" has been interpreted to mean "cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." *Hessler*, 851 S.W.2d at 518 (quoting *Belle*

*State Bank v. Indus. Comm'n,* 547 S.W.2d 841, 846 (Mo.App.1977)).

The good cause necessary to support an award of unemployment benefits where an employee voluntarily quits must be cause attributable to her work or her employment. *Quik N' Tasty Foods, Inc. v. Division of Employment Security,* 17 S.W.3d 620, 625–26 (Mo.App.2000). An employee who voluntarily terminates may avoid the immediate benefit disqualification of Section 288.050 if the cause is attributable to her employer. *O'Dell,* 376 S.W.2d at 142. Whether the cause is so attributable involves the application of the law to the facts, which is a question of law we review independently of the Commission's determination. *Travelers Equities Sales, Inc. v. Div. of Employment Sec.,* 927 S.W.2d 912 (Mo.App.1996). The phrase "attributable to his work or to his employer" means "that it must be the work or employer himself that creates the condition making it unreasonable to expect this employee to continue work." *Quik 'N Tasty,* 17 S.W.3d at 626; *Hessler,* 851 S.W.2d at 518. Conditions that motivate the employee to voluntarily leave "must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element." *Id.* The determination of good cause is a question of law, and there are two elements of good cause-reasonableness and good faith. *Id.; Bunch,* 965 S.W.2d at 878.

In support of its ruling, the Commission argues that the employer's actions in making changes in the job assignments of Ms. Cooper were reasonable, that the changes it made were a result of sound business, and that such changes do not constitute good cause for an employee to voluntarily leave work. The Commission also argues there was substantial evidence to support its decision: that Ms. Cooper sought the transfers, from the meat and cheese department to the salad bar area and then to the kitchen, because those areas were colder areas of the store; and she then agreed to work as a courtesy clerk to gain more hours of work without mentioning to her supervisors that she had difficulty getting the shopping carts into the store from the parking lot. The Commission contends that Ms. Cooper quit rather than work as a courtesy clerk because she had difficulty physically getting the shopping carts in from the parking lot, and that she would have been retained in her employment with Hy–Vee had she not resigned. The Commission asserts further that it was incumbent upon Ms. Cooper to inform her employer that she was displeased with its handling of her concerns or that she was having difficulties or was unable to perform her duties, rather than to resign; and that her dissatisfaction with her duties and the variance in her hours does not constitute good cause to voluntarily relinquish her employment. Finally, the Commission argues that Ms. Cooper was not forced to resign but did so of her own volition, because she wanted to, and that her reasons for leaving did not constitute good cause attributable to her employer.

Ms. Cooper argues, on the other hand, that the evidence supports that she did in fact raise her concerns with her employer prior to leaving her job and thereby acted in good faith. She claims that the evidence fails to show that she was unable to keep up with her duties in the salad bar; that she acted in good faith by discussing her complaints with her employer; and that the Commission's findings otherwise were against the weight of the evidence because even her supervisor, Mr. Basch, testified that he was aware of her concerns. She contends that the evidence shows she was indeed able to perform her job; that her hours were reduced not because of an inability to work or poor performance, but because it was "inconvenient to work the position she was in because of the physical condition"; and that her reason for terminating her employment was the alteration of employment conditions from those for which she had been hired, constituting a constructive discharge. Finally, Ms. Cooper complains that the Com-

mission incorrectly substituted its judgment for that of the Referee, who heard the testimony and was in the best position to weigh the credibility of the witnesses.

First, we consider Ms. Cooper's assertion that we should defer to the factual findings of the Referee because the Referee heard the testimony and was in the best position to weigh the credibility of the witnesses. We need not address that issue, however, because neither the referee nor the Commission made any findings concerning witness credibility.

The crux of the matter is whether Ms. Cooper left her employment for cause attributable to her employer. In addressing this same issue, we recently held that, absent discriminatory or unfair or arbitrary treatment, mere dissatisfaction with working conditions does not constitute good cause for quitting employment unless the dissatisfaction is based upon a substantial change in wages or working conditions from those in force at the time the claimant's employment commenced. *VanDrie v. Performance Contr.*, 992 S.W.2d 369, 373 (Mo.App.1999); *Mitchell v. Division of Employment Security*, 922 S.W.2d 425, 428 (Mo.App.1996). The Referee found that the job duties of a courtesy clerk were substantially different from Ms. Cooper's original work in the meat and cheese department or salad bar area. The Commission, on the other hand, found there was no substantial difference on the same facts.

▪ Whether there was a substantial difference is a question of law. The Commission emphasized that Ms. Cooper accepted and agreed to work as a courtesy clerk. We do not believe much weight can be given to that acceptance, considering the potential consequences of loss of her partial unemployment benefits if she declined the offer. Section 288.050. That section provides that an employee is disqualified from receiving benefits if the deputy finds that he failed to "accept suitable work when offered." Ms. Cooper was hired to work in the meat and cheese department. She was not hired to work as a courtesy clerk, involving physically demanding work such as sacking groceries and lifting them into and out of shopping carts and into customers' vehicles, as well as bringing in carts from the parking lot. The work Ms. Cooper performed in the meat and cheese department, the salad bar, and the kitchen were sufficiently similar to each other and required a similar physical capability. It is clear to us that the physical requirements for those positions are vastly different from the physical requirements of the courtesy clerk position. The employer's transferring Ms. Cooper to the courtesy clerk position constituted a substantial change in working conditions from those for which she was hired. Moreover, "[t]he treatment of an employee by his employer or supervisor may be so arbitrary and unacceptable to a person of ordinary reasonable sensitivity as to afford justification for the employee to quit the employment or to refuse any new employment by that employer." *Smith v. Labor and Indus. Relations Comm'n*, 656 S.W.2d 812, 817 (Mo.App. 1983). We find that it was not unreasonable for Ms. Cooper to quit because a reasonable 71 year old woman under the same or similar circumstances, and of small stature like Ms. Cooper, would have done the same. *Sokol*, 946 S.W.2d at 26.

▪ The Commission found that, although Ms. Cooper had asked about other openings "on a couple of occasions," she did not act in good faith in resigning her employment because she did not voice her concerns to her employer or bring to management's attention the problems she had with her new working conditions. Good cause, and necessarily good faith, is a legal issue, and varies depending upon the facts of each case. In many cases, good faith will require a communication to the employer of the employee's problems or concerns. This is intended to provide the employer with an opportunity to correct or ameliorate conditions that the employer did not know about or did not know were a cause of concern to the employee. But we

are not persuaded that good faith always requires a complaint by the employee. Where, as here, the change in working conditions results in a substantial change in the nature of the work for which the employee was hired, a determination of good faith involves an inquiry into whether the employer has acted sincerely in assigning the new job duties. Hy–Vee did not dispute the evidence that there were no additional hours for Cooper before she filed a partial unemployment claim and suddenly hours were available once she did. A Hy–Vee representative admitted that Cooper had expressed that she felt she was being forced out. At a time when her hours were reduced, a new employee was hired in one of the areas in which she had worked. She had problems with her paycheck. Management seemed to her unresponsive about her earlier expressions of concerns about hours and duties. She said one manager smirked or commented about her runny nose. Here, the employer advised Ms. Cooper it could give her more hours only as courtesy clerk. Not only was the employer aware of Ms. Cooper's complaints, but the situation was obvious to the employer. Ms. Cooper quit her employment in response to her employer's unreasonable action of placing her in a physically demanding position for which she was not hired. There was substantial evidence that Ms. Cooper acted in good faith. The Commission's finding that she did not quit with good cause erroneously applied the law.

For the reasons stated, we reverse the Commission's decision that Della E. Cooper left her job voluntarily without good cause attributable to her work or to her employer. We remand to the Commission to enter an order consistent with this opinion.

BRECKENRIDGE, Judge, and SMART, Judge, concur.