David Wayne SCHUENEMANN,
Claimant–Appellant,

v.

ROUTE 66 RAIL HAVEN, LTD.,
Employer–Respondent,

and

Missouri Division of Employment
Security, Respondent.

No. SD 31017.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 30, 2011.

James D. McNabb, Springfield, MO, for Appellant.

Bart A. Matanic, Jefferson City, MO, for Respondent Division of Employment Security.

DON E. BURRELL, Presiding Judge.

David Wayne Schuenemann ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("the Commission") that Claimant was disqualified from receiving unemployment compensation benefits because he left work voluntarily without good cause. We affirm.

### Principles of Review

"[T]he employee has the burden of showing that either he did not leave employment voluntarily, or, that if he did, he did so with good cause." *Miller v. Help at Home, Inc.*, 186 S.W.3d 801, 806 (Mo. App. W.D.2006). "The Commission's determination of whether an employee voluntarily left his employment or was discharged is a factual determination." *Id.* at 805. Whether the facts as found by the Commission constitute "good cause" for

leaving employment is a legal question we review *de novo*. *Madewell v. Division of Emp't Sec.*, 72 S.W.3d 159, 164 (Mo.App. W.D.2002).

We defer to the Commission's determinations "as to the weight of the evidence and the credibility of the witnesses." *Comeaux v. Convergys Customer Mgmt. Grp., Inc.*, 310 S.W.3d 759, 762 (Mo.App. E.D.2010). On disputed matters, the Commission may believe all, none, or some of the testimony presented. *Lusher v. Gerald Harris Constr., Inc.*, 993 S.W.2d 537, 545 (Mo.App. W.D.1999).

We may reverse the decision of the Commission only if: 1) the Commission acted without or in excess of its powers; 2) the decision was procured by fraud; 3) the facts found by the Commission do not support the award; or 4) there was no sufficient competent evidence in the record to warrant the making of the award. Section 288.210;[1] *Buckley v. Safelite Fulfillment, Inc.*, 299 S.W.3d 757, 760 (Mo.App. S.D. 2009). We examine the whole record to determine whether sufficient competent evidence supported the Commission's decision. *Freeman v. Gary Glass & Mirror, L.L.C.*, 276 S.W.3d 388, 391 (Mo.App. S.D. 2009).

## Factual and Procedural Background

Claimant worked as a maintenance supervisor for Route 66 Rail Haven, Ltd. ("Employer") at its Rail Haven motel. Claimant filed for unemployment benefits after he ceased working for Employer in July 2010. Employer protested the claim before the Missouri Division of Employment Security ("the Division"), asserting that "Claimant voluntarily quit his position." A Division deputy determined that Claimant was disqualified from receiving benefits because he left work without good cause.

Claimant appealed the deputy's determination to the Division's Appeals Tribunal ("the Appeals Tribunal").[2] A telephone hearing was held and testimony was offered by Claimant, Randy Nottle (Employer's general manager for the motel where Claimant worked), and Rhonda Clifton (Employer's human resource manager).[3]

The Appeals Tribunal, like the deputy, found that "[C]laimant left work voluntarily because [he] could have continued his employment." Claimant appealed the decision of the Appeals Tribunal to the Commission. The Commission also decided the matter adversely to Claimant, affirming and adopting the decision of the Appeals Tribunal as its own.

### Evidence Adduced at the Hearing

### Claimant's Testimony

Claimant testified that he did not quit his job but was discharged by Employer's

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. Claimant provided the following statement on his appeal form:
   Gordon Elliott called me in and told me I was a bad supervisor, then, offered to cut my hours and to do laundry at Harboor [sic] Sweets [sic] and I told him no, I think I'll stick with maintenance at Rail Haven. Gordon said then you need to find somewhere else to live.
   I said, no problem, I[sic] get my stuff out of the room right now it doesn't matter to me.
   Gordon said [sic] ok, then your [sic] *terminated.*
   My job description is maintenance not laundry.
   (Emphasis as stated in original).

3. Clifton confirmed Claimant's work history, but her knowledge of what happened at the meeting between Claimant, Elliott, and Nottle was limited to information she gathered from other individuals and from Employer's records.

"owner," Gordon Elliott, on July 13, 2010. Nottle was present when Claimant was discharged. When Claimant was asked what Elliott said that caused him to believe that he no longer had a job, Claimant stated, "Well, he told me I need to get my stuff out of the room.[4] And I said, no problem, I'll go get it right now. He said, then you're terminated." Elliott told Claimant that Claimant "was a bad supervisor" and "if [Claimant] had too many tasks then [he] didn't know what to do first."

Claimant said that Elliott was willing to move him to another motel but did not "need that much help" at the other motel and "was going to have to cut [Claimant]'s hours and [his] room would no longer be free." Elliott told Claimant that he also needed "help with laundry" at the other motel. Claimant testified, "And that's why I turned it down because I do maintenance. I don't do laundry."

When the hearing referee asked Claimant what Elliott told Claimant his reduced hours would be, Claimant responded, "He just asked me how many hours I needed a week and I didn't have no answer to that because I wasn't making enough money the way it was."

### Nottle's Testimony

Nottle testified that Elliott discussed with him an inspection Employer had conducted at the Rail Haven motel. Nottle understood that inspection to have resulted in the conclusion that Claimant was "not keeping up with work" and that Claimant's maintenance work was not meeting "Best Western standards." Nottle and Elliott decided that "it was probably better to go in a different direction over at Rail Haven for the maintenance position[.]" Nottle testified that the following occurred when Claimant then met with Elliott and Nottle.

> [Claimant] came over and [Elliott] had offered him another position over at Arbor Suites over by the mall to do maintenance and some laundry, housekeeping, to do—to make up hours. And he was going to be getting the same rate of pay and a place to live because he didn't have a place to live because he was living at Rail Haven. And [Claimant] didn't want to do that and pretty much got up and left after—after that [Claimant] said something about nice working with you or for you or something and got up and left.

Elliott offered to give Claimant the same amount of hours he was currently working but said those hours would have to be split between maintenance and laundry duties. Nottle was unsure of the precise division of duties, but he estimated that maintenance work would have accounted for "25 to 30" and laundry would have consumed "15 to 20."[5] Nottle said he also knew that "[Elliott] had talked to [Claimant] about doing mostly maintenance over there but to get his full amount of hours to do some laundry hours as well." Nottle testified that Claimant was not told to get his belongings out of his motel room. Instead, according to Nottle, Claimant "said he would get his stuff out of the room and leave."

### The Commission's Findings

The Commission found that Employer was not satisfied with Claimant's work at Rail Haven and that Elliott and Nottle met with Claimant to offer him "a transfer to work at Arbor Suites in maintenance and laundry." Claimant's pay, hours, and free

---

4. Claimant testified that he was allowed to reside in the motel he maintained.

5. We presume the number references are to hours per week.

room benefit were to remain the same. "[C]laimant indicated he preferred to continue working in maintenance at Rail Haven. [Claimant] was then told he needed to find some where [sic] else to live." Claimant interpreted this to mean he had been discharged, so he left, commenting that he appreciated working for Employer.

The Commission found that "not until [Claimant] indicated his unwillingness to accept that transfer was he told to find some place [sic] else to live. [Claimant] could have accepted the transfer and preserved the employment." The Commission further found that Claimant's decision was not made in good faith and that he did not have good cause to leave his employment "because his rate of pay, work hours, and benefits (being furnished a room free of charge) and his responsibilities[ ] would have remained substantially the same." As a result, the Commission found that Claimant was disqualified for waiting week credit and benefits until such time as he might become eligible based upon other employment.

## Analysis

Claimant contends the Commission erred in finding that he "voluntarily terminated his employment without good cause attributable to his work or to his employer by refusing to continue employment, where the alleged transfer of [Claimant] was to an employment with different working conditions, which was unilaterally imposed and which an ordinary, reasonable person would be justified in refusing." In the argument supporting his point, Claimant asserts "that the record is insufficient to support a finding that [Claimant] voluntarily left his employ without good cause attributable to his work or to his employer and that he did have such 'good cause.'" We disagree.

*The Question of Fact: Termination or Resignation?*

■ There was conflicting evidence about whether Claimant quit or was terminated. The Commission found credible Nottle's testimony that Claimant was not told to find another place to live until after Claimant had indicated that he would not accept Employer's proposed transfer. The Commission also credited Nottle's testimony in finding that the proposed transfer would have left Claimant with the same number of hours, same rate of pay, and continued provision of a free room. Based on this testimony, the Commission found that Claimant "terminated the employment voluntarily." Nottle's testimony constituted sufficient, competent evidence supporting the Commission's findings. In addition, those findings were also consistent with Claimant's testimony that he turned down the offer because "I do maintenance. I don't do laundry."

*The Question of Law: Good Cause for the Resignation?*

■ Because the Commission's finding that Claimant was not terminated but voluntarily left his employment was supported by sufficient, competent evidence, the issue then becomes whether Claimant had good cause to quit his employment under the facts found by the Commission. "Section 288.050.1 makes good cause a condition precedent to immediate receipt of unemployment compensation benefits where the employee voluntarily quits his or her job." *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993). This section is "strictly and narrowly construed in favor of finding that an employee is entitled to compensation." *Sokol v. Labor & Indus. Relations Comm'n*, 946 S.W.2d 20, 23 (Mo.App. W.D. 1997).

Claimant states in his brief that he found no case "that falls closely to the facts of this case" and argues that the cases generally suggest that "good cause" focuses on "what a reasonable or 'average' person would do, acting in good faith." *See, e.g., Mitchell v. Division of Emp't Sec.,* 922 S.W.2d 425, 427 (Mo.App. S.D. 1996).

The Division argues in support of a similar test set forth in *Quik 'N Tasty Foods, Inc. v. Division of Emp't Sec.,* 17 S.W.3d 620, 626 (Mo.App. W.D.2000) (stating that the two elements of good cause are reasonableness and good faith).

Missouri courts have interpreted good cause as "cause which reasonably would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment.... [Good cause] is positive conduct which is consistent with a genuine desire to work and be self-supporting.... [T]he circumstances motivating an employee to voluntarily terminate employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element." *Hessler,* 851 S.W.2d at 518 (quoting *Belle State Bank v. Industrial Comm'n of Missouri,* 547 S.W.2d 841, 846 (Mo.App. Spfd.D.1977)) (internal citations omitted).

The Commission found that Claimant's decision to quit work was not made in good faith because his rate of pay, work hours, benefits (being furnished a free room), and job responsibilities would have remained substantially the same. Demonstration of good faith may vary in different circumstances. *Cf., e.g., Lashea v. Fin–Clair Corp.,* 30 S.W.3d 237, 241 (Mo.App. E.D. 2000) (in order to demonstrate good faith, an employee must show that he tried to resolve the problem before resorting to the drastic action of quitting his job); *Cooper v. Hy–Vee, Inc.,* 31 S.W.3d 497, 505 (Mo.

App. W.D.2000) (a prior complaint by the employee was not required in order to show good faith when the change in duties was substantial and evidence suggested the employer's motives were not sincere).

Claimant argues that he was "justified" in rejecting Employer's proposed transfer to "a room in another part of town, work at another location, a different type of work than he had accepted and a vague description of that work so that [Employer] might choose any combination of hours between the maintenance and laundry." He also argues that he was "justified in being leery of a transfer to do maintenance at an unfamiliar motel at lesser hours by [Employer]." These arguments rely on a faulty premise—that Claimant's transfer would have resulted in his hours being reduced. This claim was rejected by the Commission based on sufficient, competent evidence.

The Division argues in its brief that "Claimant's cavalier statement of 'I don't do laundry,' [ ]does not show good faith. Rather it shows bad faith." We agree.

Claimant cites language in *Cooper* that an employer's treatment of its employee " 'may be so arbitrary and unacceptable to a person of ordinary reasonable sensitivity as to afford justification for the employee to quit the employment or to refuse any new employment by that employer.' " *Cooper,* 31 S.W.3d at 504 (quoting *Smith v. Labor & Indus. Relations Comm'n of Missouri,* 656 S.W.2d 812, 817 (Mo.App. W.D. 1983)). In *Cooper,* a grocery store employee originally hired to work in the meat and cheese department was already receiving partial unemployment benefits after a transfer to the kitchen resulted in a loss of hours. 31 S.W.3d at 500. The assistant store director asked employee what it would take for her to drop her unemployment compensation claim. *Id.* at 500–01.

Employee indicated that she needed to work more hours. *Id.* Employee was then reassigned to still another position that involved sacking groceries, loading groceries in and out of vehicles, and bringing shopping carts in from the parking lot. *Id.* The Western District stated, "Where, as here, the change in working conditions results in a substantial change in the nature of the work for which the employee was hired, a determination of good faith involves an inquiry into whether the employer has acted sincerely in assigning the new job duties." *Id.* at 505. The store "did not dispute the evidence that there were no additional hours for [employee] before she filed a partial unemployment claim and suddenly hours were available once she did." *Id.* The Western District found that employee "quit her employment in response to her employer's unreasonable action of placing her in a physically demanding position for which she was not hired. There was substantial evidence that [employee] acted in good faith." *Id.*

The instant case is distinguishable from *Cooper.* Unlike the grocery store employee in *Cooper,* Claimant did not even attempt Employer's proposed reassignment. Claimant alleges it would have been inconvenient for him to move from one motel to another, but he does not specify the nature of this inconvenience and concedes that the motels were located in the same town. Claimant also contends that laundry work was "a different type of work than he had accepted" and that he was only given "a vague description of that work so that [Employer] might choose any combination of hours between the maintenance and laundry." This claim ignores Nottle's testimony about the anticipated composition of Claimant's hours, and Claimant did not attempt to clarify with Employer whether his new duties would be substantially different from his old ones.

"Missouri courts have held in a number of cases that an employee's failure to attempt resolution of the matters which were given as a reason for quitting a job indicates a lack of good cause and justifies a denial of unemployment benefits." *Mitchell,* 922 S.W.2d at 429. As earlier noted, the Commission's factual finding that Claimant's new work was not to be for lesser hours was supported by sufficient, competent evidence. And Claimant points to no evidence that "justified [ ] being leery of a transfer to do maintenance at an unfamiliar motel ... by this employer."

The Commission did not err in determining that Claimant lacked good cause to quit his employment.[6] Claimant's point is denied, and the order of the Commission is affirmed.

RAHMEYER and LYNCH, JJ., Concur.

---

6.  The facts as found by the Commission actually demonstrated the opposite—that Employer acted in good faith in trying to retain Claimant as an employee with substantially the same pay, hours, and benefits even though his job performance at his current duties had been judged to be unsatisfactory.